1   MARC M. SELTZER (54534)
    mseltzer@susmangodfrey.com
2   STEVEN G. SKLAVER (237612)
    ssklaver@susmangodfrey.com
3   SUSMAN GODFREY L.L.P.
    1901 Avenue of the Stars, Suite 950
4   Los Angeles, CA 90067-6029
    Telephone:  (310) 789-3100
5   Facsimile:  (310) 789-3150

6   MATTHEW R. BERRY  *(Pro Hac Vice to be submitted)*
    mberry@susmangodfrey.com
7   SUSMAN GODFREY L.L.P.
    1201 Third Avenue, Suite 3800
8   Seattle, Washington 98101-3000
    Telephone: (206) 516-3880
9   Facsimile: (206) 516-3883

10  Attorneys for Plaintiff and the Class

11                  **UNITED STATES DISTRICT COURT**

12                  **CENTRAL DISTRICT OF CALIFORNIA**

13                       **WESTERN DIVISION**

14

| | |
|---|---|
| 15  RICH HILL, individually and on behalf of all others similarly 16  situated, | Case No. |
| 17            Plaintiff, | **CLASS ACTION** |
| v. | **COMPLAINT FOR:** |
| 18  VOLKSWAGEN GROUP OF | **1) FRAUD BY CONCEALMENT** |
| 19  AMERICA, INC., a New Jersey Corporation, and DOES 1 through | **2) BREACH OF CONTRACT** |
| 20  50, inclusive | **3) VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW [CAL.** |
| 21            Defendants. | **BUS. & PROF. CODE § 17200, et seq.];** |
| 22 | **4) FALSE ADVERTISING [CAL. BUS. & PROF. CODE § 17500, et seq.];** |
| 23 | **5) VIOLATION OF CALIFORNIA** |
| 24 | **CONSUMER LEGAL REMEDIES ACT [CAL. CIV. CODE § 1750, et seq.];** |
| 25 | **6) BREACH OF EXPRESS** |
| 26 | **WARRANTY [CAL. COM. CODE § 2313]** |
| 27 | **7) VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT [CAL.** |
| 28 | **CIV. CODE §§ 1791.1 & 1792]** |
| | **JURY TRIAL DEMANDED** |

1.    Plaintiff Rich Hill, by his attorneys, for his complaint against defendants Volkswagen Group of America, Inc., and Does 1 through 50 (collectively, "Volkswagen") alleges as follows:

## **JURISDICTION AND VENUE**

2.    This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from at least one defendant; there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5 million.

3.    This Court has personal jurisdiction over defendants because defendants conduct business in California and has sufficient minimum contacts with California.  For example, Volkswagen operates the Volkswagen Electronic Research Laboratory in Belmont, California.

4.    Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this district because a substantial part of the acts giving rise to plaintiff's claims occurred in this district and because Volkswagen has caused harm to plaintiff and other Class Members residing in this District.

## **NATURE OF ACTION**

5.    This is a nationwide class action lawsuit against Volkswagen for its sale of over 482,000 vehicles that Volkswagen touted as "CleanDiesel" and "eco-conscious" despite knowing that the vehicles fail to satisfy even the baseline state and federal emission standards.  In order to maximize corporate profits, Volkswagen launched a marketing campaign that fooled consumers into paying a significant *premium* for "CleanDiesel" vehicles that supposedly maximized fuel efficiency while at the same time minimizing harmful emissions.  Hundreds of thousands of consumers purchased these Volkswagen "CleanDiesel" vehicles based on the representation that they were both fuel efficient and "eco-friendly."

6.    But after being pursued by state and federal authorities, Volkswagen now admits that its representations are false.  On September 22, 2015, the head of

2

Volkswagen's United States Division gave the following confession: "Let's be clear about this. Our company was dishonest. With the EPA, and the California Air Resources Board, and with all of you. And in my German words, we have totally screwed up."

7.     Volkswagen was able to fool consumers and regulatory bodies by using what is called a "defeat device." The defeat device is secretly added to the vehicle's software and can detect when the vehicle is being tested for emissions. During that time, the vehicle's emission control systems engage and minimize pollution to ensure that the vehicle passes the emissions test. However, as soon as the vehicle returns to everyday driving, the defeat device disengages certain emission controls, which increases performance but causes the vehicle to illegally emit up to 40 times the legal limit of certain pollutants.

8.     Volkswagen installed these defeat devices into over 482,000 "CleanDiesel" vehicles to evade state and federal clean air standards by concealing the vehicles' emission of nitrogen oxide, which contributes to the creation of ozone and smog. The full extent to which Volkswagen installed the defeat devices in its vehicles is not yet clear, as it admitted on September 22, 2015 that it had installed such devices in over 11 million of its vehicles worldwide.

9.     On September 18, 2015, the United States Environmental Protection Agency ("EPA") sent a Notice of Violation ("NOV") to Volkswagen concluding that Volkswagen violated the Clean Air Act ("CAA") by manufacturing and installing defeat devices in certain model year 2009 through 2015 diesel vehicles.

10.     Also on September 18, 2015, the California Air Resources Board ("CARB") notified Volkswagen that it initiated "an enforcement investigation of VW regarding all model-year 2009 through 2015 light-duty diesel vehicles equipped with 2.0 liter engines." CARB's discussions with Volkswagen "culminated in VW's admission in early September 2015 that it has, since model

3

1  year 2009, employed a defeat device to circumvent CARB and the EPA emission
2  test procedures."

3      11.    Volkswagen knew what was right, but then did the opposite.  In its
4  2014 Sustainability Report, Volkswagen states, "In the long term, a company can
5  only be successful if it acts with integrity, complies with statutory provisions
6  worldwide and stands by its voluntary undertakings and ethical principles even
7  when this is the harder choice."  Yet when faced with the seemingly simple choice
8  of honesty to consumers and regulators or engaging in illegal conduct that deceives
9  regulators and rips off consumers, Volkswagen chose the latter.

10     12.    The federal and state investigations of Volkswagen are ongoing, and it
11 has been reported that Volkswagen could be facing civil penalties of over $18
12 billion and criminal charges for its illegal and deceptive conduct.

13                              **PARTIES**

14     **A.    Plaintiff**

15     13.    Plaintiff Rich Hill is a resident of Ventura County, California.  Mr.
16 Hill purchased a 2015 Volkswagen Golf Sportwagen Diesel.

17     14.    Mr. Hill's purchased the 2015 Volkswagen Golf Sportwagen Diesel
18 based in part on its emissions ratings.  He would not have purchased the vehicle or
19 would have paid significantly less had he known about the defeat device and that
20 the vehicle did not pass state and federal emissions standards.

21     **B.    Defendant**

22     15.    Volkswagen Group of America, Inc. is a New Jersey corporation.  Its
23 principal place of business is located at 2200 Ferdinand Porsche Drive, Herndon,
24 Virginia 20171.  At all times relevant to this action, Volkswagen operated in all 50
25 states plus the District of Columbia.

26     16.    At all relevant times, Volkswagen and/or its agents designed,
27 manufactured, distributed, sold, leased, and warranted the Defective Vehicles under
28 the Volkswagen and Audi brand names throughout the United States.  Volkswagen

                                    4

and/or its agents designed the CleanDiesel engines, including the defeat device. Volkswagen also developed and distributed the vehicles' owners' manuals, advertisements, and other promotional materials relating to the vehicles.

## **FACTUAL ALLEGATIONS**

### A.   **Volkswagen's "CleanDiesel" Engine**

17.   Volkswagen installed the defeat device in the diesel models of at least the following vehicles (collectively, "Defective Vehicles"):

        a. Jetta (Model Years 2009-2015)

        b. Beetle (Model Years 2009-2015)

        c. Audi A3 (Model Years 2009-2015)

        d. Golf (Model Years 2009-2015)

        e. Passat (Model Years 2014-2015)

18.   To win over consumers skeptical of diesel engines, Volkswagen launched an intensive marketing campaign that branded the engines as "CleanDiesel" and touted their "extreme efficiency," "turbocharged power," and "eco-conscious[ness]."

19.   For example, Volkswagen's website claimed:  "This ain't your daddy's diesel.  Stinky, smoky, and sluggish.  Those old diesel realities no longer apply.  Enter TDI Clean Diesel.  Ultra-low-sulfur fuel, direct injection technology, and extreme efficiency.  We've ushered in a new era of diesel."

20.   Volkswagen's website also preached that "Efficiency isn't just a word. It's our philosophy.  Our commitment to making vehicles that are eco-conscious is part of bigger thinking.  Because by building efficient vehicles that people actually want to drive, we're also building a better future for all of us."  Consistent with that purported philosophy, a Volkswagen advertisement for the Jetta concluded with the following tag-line:  "Ultra low emissions.  Jetta TDI Clean Diesel."

21.     On the "Environment" page of its website, Volkswagen states that it takes "environmental responsibility very seriously.  When it comes to making our cars as green as possible, Volkswagen has an integrated strategy focused on reducing fuel consumption and emissions, building the world's cleanest diesel engines and developing totally new power systems, which utilize new fuel alternatives."

22.     Volkswagen also sought to distinguish polluting diesels from its "CleanDiesel" technology.  One of its advertisements represented:  "These are not the kind of diesel engines that you find spewing sooty exhaust like an old 18-wheeler.  Clean diesel vehicles meet the strictest EPA standards in the U.S.  Plus, TDI technology helps reduce sooty emissions by up to 90%, giving you a fuel-efficient and eco-conscious vehicle."

23.     Volkswagen boasted that its advertising campaign for "CleanDiesels" was effective.  In March 2013, Volkswagen released the results of its first annual "Clean Diesel IQ Survey," and noted that "[t]he survey found that clean diesel drivers have an overwhelming commitment to clean diesel vehicles and are acutely aware of its benefits[.]"

24.     A few months later in August 2013, Volkswagen issued a press release announcing a new "Clean Diesel engine."  Volkswagen's General Manager of its Energy and Environmental Office reported that "[t]he Volkswagen Group is a leader in clean diesel technology," and that with the introduction of the new engine, "we are excited that our family of TDI Clean Diesel vehicles is continuing to improve and will be even more clean, fuel efficient and powerful."

25.     And a brochure on the "all-new Audi A3 TDI Sedan" represented:  "It is a diesel without compromise, exactly the kind you should expect from Audi TDI clean diesel."

26.     All of these representations are false.  The diesel engines at issue in the representations secretly contained the defeat devices and fail both state and federal emissions standards, spewing up to 40 times the legal limit of nitrogen oxide.

27.     Volkswagen marketed its CleanDiesel vehicles specifically to a market willing to pay a *premium* for clean, efficient, and eco-friendly vehicles, and yet the vehicles at issue cannot even pass state and federal emission standards.   And Volkswagen knew or should have known that its representations are false because it designed and implemented the defeat devices to evade scrutiny by state and federal regulators and trusting consumers.

28.     The premium that Volkswagen charged for the Defective Vehicles is significant.  For example, for the 2015 Volkswagen Jetta, the base S model with a gasoline engine has a starting MSRP of $18,780 while the base TDI S CleanDiesel has a starting MSRP of $21,640, a price premium of $2,860 or over 15%.  And for the highest trim Jetta model, the price premium is even higher.  The Jetta SE has a starting MSRP of $20,095 while the CleanDiesel TDI SEL MSRP is $26,410, which is over 31% higher.

29.     The price premiums that Volkswagen charged for "CleanDiesel" engines occur across all models of Defective Vehicles, as shown by the table below:

| Model | Base Trim | Mid-Level Trim | Top-Line Trim |
|---|---|---|---|
| VW Jetta | $2,860 | $4,300 | $6,315 |
| VW Beetle | $4,635 | n/a | $2,640 |
| VW Golf | $2,950 | $1,000 | $1,000 |
| VW Passat | $5,755 | $4,750 | $6,855 |
| Audi A3 | $2,805 | $3,095 | $2,925 |

7

30.     Volkswagen has now removed many of its "CleanDiesel" advertisements from the Internet.  For example, the "Diesel Old Wives' Tales" video advertisement on Volkswagen's YouTube page was removed at Volkswagen's request, according to a media report.  And the same article reported that "a large number of other videos concerning diesels appears to have been removed as well.  Its 'TV Commercials' playlist now not only features missing gaps where videos were deleted, but also where videos have been set to private by the company."  The author noted, "The obvious implication is that Volkswagen's been scrubbing all of its promotional work for its diesel technology in the wake of its use of defeat devices for EPA smog tests."

## B.     Volkswagen Evasion of State and Federal Emissions Standards

31.     The Clean Air Act seeks to protect human health and the environment by reducing emissions of nitrogen oxides and other pollutants from mobile sources of air pollution, such as vehicles.  Nitrogen oxides are a family of highly reactive gases that play a major role in the atmospheric reactions with volatile organic compounds.  Nitrogen oxide pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter, and exposure to these pollutants has been linked to a range of serious health effects, including increased asthma attacks and other respiratory illnesses that can be serious enough to send people to the hospital.  Exposure to ozone and particulate matter have been associated with premature death due to respiratory-related or cardiovascular-related effects.

32.     The Clean Air Act requires vehicle manufacturers to certify to the EPA that their products will meet applicable federal emission standards to control air pollution, and every vehicle sold in the United States must be covered by an EPA-issued certificate of conformity.  Specifically, 40 C.F.R. Part 86 sets emission standards and test procedures and section 203 of the CAA, 42 U.S.C. § 7522, sets

compliance provisions.  Light-duty vehicles must satisfy emission standards for certain air pollutants, including nitrogen oxides.  40 C.F.R. § 86.1811-04.

33.    To obtain the required certification, a vehicle manufacturer must submit a certificate of conformity application to the EPA for each test group of vehicles that it intends to enter into United States commerce.  The certificate of conformity application must identify all auxiliary emission control devices installed on the vehicles and include a justification for each explaining why it is not a defeat device, which is defined as an auxiliary emission control device "that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use[.]" Vehicles with defeat devices cannot be certified.

34.    On September 18, 2015, the EPA issued a press release reporting the issuance of a Notice of Violation alleging that over 482,000 four-cylinder Volkswagen and Audi diesel vehicles from model years 2009-2015 include software that circumvents EPA emission standards for certain air pollutants.  The EPA described the Volkswagen defeat devices as follows:

"Specifically, VW manufactured and installed software in the electronic control module (ECM) of these vehicles that sensed when the vehicle was being tested for compliance with EPA emission standards.  For ease of reference, the EPA is calling this the 'switch.'  The 'switch' senses whether the vehicle is being tested or not based on various inputs including the position of the steering wheel, vehicle speed, the duration of the engine's operation, and barometric pressure.  These inputs precisely track the parameters of the federal test procedure used for emission testing for EPA certification purposes.  During EPA emission testing, the vehicles' ECM ran software which produced compliant emission results under an ECM calibration that VW referred to as the 'dnyno calibration' (referring to the equipment used in emission testing, called a dynamometer).  At all other times during normal vehicle operation, the 'switch' was activated and the vehicle ECM software ran a separate 'road calibration' which reduced the effectiveness of the emission control system (specifically the selective catalytic reduction or the lean NOx trap).  As a result, emissions of NOx

9

increased by a factor of 10 to 40 times above the EPA compliant levels, depending on the type of drive cycle (e.g., city, highway)."

35.    The EPA and CARB were first alerted to potential emissions problems with the Defective Vehicles in May 2014 when the West Virginia University's Center for Alternative Fuels, Engines & Emissions published results of a study that found significantly higher in-use emissions from a 2012 Jetta and a 2013 Passat. Despite the study, Volkswagen continued to assert to the EPA and CARB that the increased emissions were caused by various technical issues and unexpected in-use conditions, and it issued a voluntary recall in December 2014 to address the issue. However, CARB's follow-up testing showed only a limited benefit to the recall. Only when it became clear that the EPA and CARB would not approve certificates of conformity for Volkswagen's 2016 model year diesel vehicles until Volkswagen could adequately explain the high emissions and ensure that the 2016 model year vehicles would not have similar issues, did Volkswagen admit it had designed and installed a defeat device in these vehicles.

36.    The EPA found that Volkswagen "knew or should have known that its 'road calibration' and 'switch' together bypass, defeat, or render inoperative elements of the vehicle design related to compliance with the CAA emission standards. This is apparent given the design of these defeat devices."

37.    The EPA's Notice of Violation concluded that by making and selling vehicles with defeat devices that allowed for higher levels of emissions during every-day driving than were certified to EPA, Volkswagen violated two provisions in the Clean Air Act. First, these defeat devices bypassed, defeated, or rendered inoperative elements of the vehicles' emission control system that exist to comply with the Clean Air Act emission standards. As a result, the EPA concluded that Volkswagen violated section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B). Second, as a result of the presence of the defeat devices in the vehicles, they do not conform in all material respects to the vehicle specifications described in the

10

applications for the certificates of conformity that purportedly cover them. Accordingly, Volkswagen "violated section 203(a)(1) of the CAA, 42 U.S.C. § 7522(a)(1) by selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing these vehicles, or for causing any of the foregoing acts."

38.    The EPA made clear that "[u]sing a defeat device in cars to evade clean air standards is illegal and a threat to public health."   It described Volkswagen's defeat device as resulting "in cars that meet emissions standards in the laboratory or testing station, but during normal operation, emit nitrogen oxides, or NOx, at up to 40 times the standard."

39.    CARB also issued a letter on September 18, 2015 informing Volkswagen that it had initiated an enforcement investigation regarding all model-year 2009 through 2015 light-duty diesel vehicles equipped with 2.0 liter engines. CARB recounted Volkswagen's admission concerning the defeat devices:

> "During a meeting on September 3, 2015, VW admitted to CARB and EPA staff that these vehicles were designed and manufactured with a defeat device to bypass, defeat, or render inoperative elements of the vehicles' emission control system.  This defeat device was neither described nor justified in the certification applications submitted to EPA and CARB.  Therefore, each vehicle so equipped would not be covered by a valid federal Certificate of Conformity (COC) or CARB Executive Order (EO) and would be in violation of federal and state law."

40.    Volkswagen knew what was right, but then did the opposite.  In its 2014 Sustainability Report, Volkswagen states, "In the long term, a company can only be successful if it acts with integrity, complies with statutory provisions worldwide and stands by its voluntary undertakings and ethical principles even

when this is the harder choice." Yet when faced with the seemingly simple choice of honesty to consumers and regulators or engaging in illegal conduct that deceives regulators and rips off consumers, Volkswagen chose the latter.

41. Volkswagen merely paid lip-service to its claim that "Climate protection is at the heart of the Group's environmental management philosophy, spanning every stage of the value creation process." Its defeat device fooled consumers into paying more for a vehicle that was purportedly "eco-conscious" when in fact they received a vehicle that produced emissions up to 40 times the legal limit.

42. Even if Volkswagen recalls the Defective Vehicles to remove the defeat device so they comply with EPA and state emissions regulations, Plaintiff and other Class Members have and will continue to suffer significant harm. For example, Volkswagen will not be able to make the Defective Vehicles comply with emissions standards without substantially degrading their performance characteristics, including horsepower and efficiency. As a result, even if Volkswagen is able to make Plaintiff and other Class Members' Defective Vehicles compliant with federal and state emissions standards, Plaintiff and Class Members will suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised.

43. In addition, Volkswagen's use of the defeat device will necessarily result in a diminution in value of every Defective Vehicle. Not only did Plaintiff and other Class Members over pay for vehicles now worth substantially less, but they will also pay more to fuel their less efficient vehicles over the years they own or lease their vehicles.

3875932v1/014996

**C.**   **Volkswagen Knew that its Representations of Eco-Conscious and Emissions Compliant Vehicles Were False**

44.   On information and belief, at all times relevant to this action, Volkswagen knew or should have known that the Defective Vehicles employed a defeat device to evade state and federal emission scrutiny and that the Defective Vehicles would not pass CARB and EPA emissions tests without the defeat device.

45.   Volkswagen admitted to both the EPA and CARB that it designed and installed a defeat device.  Volkswagen designed and installed the defeat device to engage emissions controls under the particular circumstances present when a vehicle is undergoing emission testing.  And the software was designed to cause certain emission control systems to disengage when the software determined that the vehicle was not undergoing the emissions test procedure.

46.   On September 22, 2015, the head of Volkswagen's United States Division gave the following confession:  "Let's be clear about this.  Our company was dishonest.  With the EPA, and the California Air Resources Board, and with all of you.  And in my German words, we have totally screwed up."

## CLASS ACTION ALLEGATIONS

47.   Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of a class (the "Class") defined as follows:

> All persons or entities who are current or former owners and/or lessees of a Defective Vehicle in the United States.  Defective Vehicles include without limitation: Model Year 2009-2015 VW Jetta; Model Year 2009-2015 VW Beetle; Model Year 2009-2015 VW Golf; Model Year 2014-2015 VW Passat; and Model Year 2009-2015 Audi A3.

48.   Excluded from the Class are governmental entities, Volkswagen, its affiliates and subsidiaries, its current or former employees, officers, directors,

13

1  agents, representatives, their family members, and members of the Court and its
2  staff.

3       49.    Plaintiff does not assert claims in this action for any personal injuries
4  caused by increased emissions in question here.  Rather, plaintiff, individually and
5  on behalf of the other Class members, seeks solely economic and injunctive relief
6  as a result of their purchase of Defective Vehicles.

7       50.    The members of the Class are so numerous that joinder of all members
8  would be impracticable.  Plaintiff does not know the exact size or identities of the
9  members of the proposed class because such information is in the exclusive control
10  of Volkswagen. The proposed Class likely includes hundreds of thousands of
11  members dispersed across the United States. The precise number of Class Members
12  can be ascertained through discovery, which will include records of Volkswagen's
13  sales, and other records and documents.

14       51.    Based on the cost of the Vehicles, plaintiff believes the amount in
15  controversy exceeds $5 million.

16       52.    There are common questions of law and fact that predominate over any
17  questions affecting only individual Class members. These common legal and
18  factual questions, include, but are not limited to:

19          a. Whether the sale and lease of the Defective Vehicles violate state
20             and federal emissions standards;

21          b. Whether Volkswagen falsely labeled and advertised its Defective
22             Vehicles as being clean, eco-conscious, and compliant with state
23             and federal emission standards;

24          c. Whether any false representations regarding state and federal
25             emissions compliance were made knowingly and willfully;

26          d. Whether Volkswagen concealed and omitted material facts from its
27             communications with and disclosure to all class members regarding
28             the Defective Vehicles' compliance with state and federal

emissions standards;

e. Whether the CleanDiesel engines in the Defective Vehicles can be made to comply with EPA and state emissions standards without substantially degrading the performance and/or efficiency of the Defective Vehicles;

f. Whether Volkswagen breached express warranties to class members regarding the Defective Vehicles;

g. Whether Volkswagen's misrepresentations or omissions constitute unfair or deceptive practices under the California Unfair Competition Law ("UCL");

h. Whether Volkswagen's representations that its Defective Vehicles comply with state and federal emissions standards violate the California False Advertising Law ("FAL");

i. Whether Volkswagen's conduct entitles Class Members to injunctive relief under the Consumer Legal Remedies Act ("CLRA");

j. Whether the above practices caused Class members to suffer injury; and

k. The proper measure of damages and the appropriate injunctive relief.

53.     Plaintiff's claims are typical of the claims of the other Class Members. Plaintiff and each of the other Class Members were exposed to the same uniform misconduct and have been injured by the same wrongful practices of Volkswagen.

54.     Plaintiff's claims arise from the same practices and course of conduct that give rise to the other Class Members' claims and are based on the same legal theories. Plaintiff will fully and adequately assert and protect the interests of the other Class Members. In addition, plaintiff has retained class counsel who are experienced and qualified in prosecuting class action cases similar to this one.

1  Neither plaintiff nor his attorneys have any interests contrary to or conflicting with

2  other Class members' interests.

3      55.    A class action is the superior method for the fair and efficient

4  adjudication of plaintiff and the Class' claims against Volkswagen since joinder of

5  all of the members of the Class is impractical.   Also, the adjudication of the

6  controversy through a class action will avoid the possibility of inconsistent and

7  potentially conflicting results.  Given the similarity of the facts and claims at issue,

8  there will be no difficulty in the management of this action as a class action.

9

10                         **STATUTE OF LIMITATIONS**

11     **A.    Fraudulent Concealment Tolling**

12      56.    Upon information and belief, Volkswagen has known that its

13  Defective Vehicles do not comply with state and federal emissions standards for

14  years, and has actively concealed from and failed to notify plaintiff, Class

15  Members, and the public of the true emission levels of its Defective Vehicles.  Any

16  applicable statutes of limitation have been tolled by Volkswagen's knowing, active,

17  ongoing concealment of the defeat device and denial of the facts as alleged herein.

18  Plaintiff and the members of the Class have been kept ignorant by Volkswagen of

19  vital information essential to the pursuit of these claims, without any fault or lack of

20  diligence on their part.  Plaintiff and the members of the Class could not reasonably

21  have discovered that Volkswagen's vehicles fail state and federal emissions

22  standards.  Volkswagen has now admitted that it was dishonest with the EPA, the

23  CARB, and with its consumers.

24     **B.    Estoppel**

25      57.    Volkswagen was and is under a continuing duty to disclose to plaintiff

26  and the members of the Class the true character, quality, and nature of its Defective

27  Vehicle emissions.  Volkswagen knowingly and affirmatively misrepresented and

28  actively concealed the true character and quality of its Defective Vehicles.  Plaintiff

16

1 reasonably relied upon Volkswagen's knowing and affirmative misrepresentations

2 and/or active concealment. Based on the foregoing, Volkswagen is estopped from

3 relying on any statutes of limitation in defense of this action.

4     **C.**   **Discovery Rule**

5     58.   The causes of action alleged herein did not accrue until plaintiff and

6 the proposed class members discovered their Defective Vehicles do not comply

7 with state and federal emissions standards. Plaintiff and the proposed class

8 members had no realistic ability to discovery that the Defective Vehicles are

9 defective until—at the earliest—the EPA and CARB sent notices to Volkswagen

10 concerning their misconduct on September 18, 2015. Not only did Volkswagen fail

11 to notify plaintiff or the proposed class members about its Defective Vehicle's non-

12 compliance with state and federal emissions standards, Volkswagen denied any

13 wrongdoing and continued to assert to CARB and the EPA that the increased

14 emissions from the Defective Vehicles could be attributed to various technical

15 issues and unexpected driving conditions. Only recently did Volkswagen finally

16 admit that the increased emissions were caused by a Defeat Device that it had

17 secretly designed and installed in the Defective Vehicles. Thus plaintiff and the

18 proposed class members were not reasonably able to discover the Defective

19 Vehicle's non-compliance until well after they had purchased the Defective

20 Vehicles, despite their exercise of due diligence, and their causes of action did not

21 accrue until they discovered that their Defective Vehicles failed to comply with

22 state and federal emissions standards.

23

24                **CAUSES OF ACTION**

25                **FIRST CLAIM FOR RELIEF**

26                **FRAUD BY CONCEALMENT**

27     59.   Plaintiff re-alleges and incorporates all paragraphs set forth above as

28 though fully set forth herein.

60.    Volkswagen intentionally concealed and suppressed material facts about the actual quality and character of the Defective Vehicles.  As alleged above, Volkswagen designed and installed a secret defeat device in the Defective Vehicles to defraud consumers and fool state and federal emissions regulators.  While Volkswagen represented to consumers that the Defective Vehicles were "eco-conscious," "CleanDiesel," and operated with "extreme efficiency," the opposite was true.  The Defective Vehicles cannot even satisfy state and federal emission standards, emitting up to 40 times more than the legal limit of certain pollutants.

61.    The defeat device was programmed into the Defective Vehicle's software and was designed to evade detection.  Volkswagen designed the defeat device so that the vehicles' emission control systems could sense when they were being tested for emissions and would at that time engage emission controls.  But when the Defective Vehicle's software detected that the emissions testing was complete, it secretly disengaged certain features of the emission control system, causing the vehicle to emit illegal level of certain pollutants.

62.    On September 22, 2015, the head of Volkswagen's United States Division confessed, "Let's be clear about this.  Our company was dishonest.  With the EPA, and the California Air Resources Board, and with all of you.  And in my German words, we have totally screwed up."

63.    Plaintiff and the Class Members reasonably relied on Volkswagen's false representations.  Volkswagen designed the defeat device to evade discovery not only by consumers but also by state and federal emissions regulators from the EPA and CARB.  In fact, Volkswagen did not finally admit to installing the defeat device on the Defective Vehicles until approximately six years after first selling Defective Vehicles, having successfully evaded detection for all of those years.

64.    Volkswagen's false representations were material to consumers.  Not only did the representations relate to the value of the Defective Vehicles, but it also concerned their compliance with state and federal emissions standards.  Indeed,

Volkswagen's advertising campaign sought out customers who cared deeply about the environment and were willing to pay a premium for a clean diesel vehicle. While Volkswagen preached to consumers about its "commitment to making vehicles that are eco-conscious," in fact Volkswagen cared only about boosting its bottom line and maximizing corporate profits.

65. Volkswagen had a duty to disclose the details relating to the defeat device to Plaintiff and the Class Members because the information was known and/or accessible only to Volkswagen, Volkswagen had exclusive knowledge relating to the design, implementation, and maintenance of the defeat device, and Volkswagen knew that the facts concerning the defeat device were unknown to and not reasonably discoverable by Plaintiff or the Class Members.

66. Volkswagen also had a duty to disclose the information because it made affirmative misrepresentations concerning the qualities of its vehicles and their compliance with state and federal emissions standards. Volkswagen's marketing of the Defective Vehicles as "CleanDiesel," "eco-conscious," and "extremely efficient," was deceptive, misleading, and incomplete without disclosing the presence of the defeat device and the Defective Vehicles' actual emissions. Having voluntarily provided information to Plaintiff and the Class Members, Volkswagen had a duty to disclose the entire truth.

67. The facts that Volkswagen omitted and concealed from Plaintiff and the Class Members were material. They went to the heart of Volkswagen's claim that the Defective Vehicles were eco-conscious, that they complied with EPA and CARB emission standards, and directly impacted the value of the Defective Vehicles.

68. Because of Volkswagen's fraudulent concealment and/or suppression of the true facts, Plaintiff and the other Class Members have sustained damages because the Defective Vehicles that they own or lease are diminished in value as a result of Volkswagen's concealment of the true quality and nature of the vehicle's

emissions.    Had Plaintiff and the Class Members known the facts concerning Volkswagen's evasion of federal and state emission standards, they would have paid less for their vehicles or would not have purchased or leased them at all.

69.    According, Volkswagen is liable to Plaintiff and the Class Members for damages in an amount to be proven at trial.

70.    Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the other Class Members rights and the representations that Volkswagen made to them, in order to enrich Volkswagen.    As a result, Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, and in an amount to be determined according to proof.

71.    Plaintiff and the other Class Members plead this count pursuant to the law of Virginia, where Volkswagen has its headquarters.    As necessary, and in the alternative, Plaintiff may allege sub-classes to allege fraudulent concealment under the laws of states other than Virginia based on the residences of Class Members.

## SECOND CLAIM FOR RELIEF
## BREACH OF CONTRACT

72.    Plaintiff re-alleges and incorporates all paragraphs set forth above as though fully set forth herein.

73.    Volkswagen's misrepresentations and omissions alleged herein, including its failure to disclose the existence of the defeat device caused Plaintiff and the other Class Members to make their purchases or leases of the Defective Vehicles.    Absent those misrepresentations and omissions, Plaintiff and the other Class Members would not have purchased or leased the Defective Vehicles, and/or would not have purchased or leased the Defective Vehicles at the prices they paid. Accordingly, Plaintiff and the Class Members overpaid for their Defective Vehicles and did not receive the benefit of their bargain.

74.     Each and every sale or lease of a Defective Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the Class Members the Defective Vehicles and by misrepresenting or failing to disclose the existence of the defeat device, including information known to Volkswagen rendering each Defective Vehicle not emission compliant and therefore less valuable.

75.     Plaintiff and the other Class Members fully performed their obligations under the contract by paying all amounts due under the contracts.

76.     As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the other Class Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF CALIFORNIA BUSINESS AND
## PROFESSIONS CODE § 17200, et seq.

77.     Plaintiff re-alleges and incorporates all paragraphs set forth above as though fully set forth herein.

78.     California Business and Professions Code § 17200, et seq. prohibits "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code §§17200, 17203.

79.     Volkswagen has engaged in unlawful business acts and/or practices by selling and/or distributing Defective Vehicles in California that contain a defeat device and fail EPA and CARB emission standards.

80.     Volkswagen further engaged in unlawful business acts and/or practices by representing that "Clean diesel vehicles meet the strictest EPA standards in the U.S."   These actions were misleading and deceptive, and violated the False

Advertising Law, California Business & Professions Code §§ 17500, et seq. and the Consumer Legal Remedies Act, California Civil Code §§ 1750, et seq.

81.    Volkswagen engaged in unlawful business acts and/or practices by making untrue, deceptive, or misleading environmental marketing claims on promotional materials including pages of the Volkswagen's website, in violation of California's "Greenwashing" Statute, Cal. Bus. & Prof. Code § 17580.5. Such claims include, but are not limited to:  overstating the environmental attributes of the Defective Vehicles it distributes in California. *See* Cal. Bus. & Prof. Code § 17580.5(a).

82.    The acts, omissions, and practices alleged herein also constitute unfair business acts and practices in that Volkswagen's conduct is immoral, unscrupulous, and offends public policy by seeking to profit from the sale and lease of Defective Vehicles that emit pollution in violation of California and federal law.

83.    Plaintiff relied on Volkswagen's misrepresentations.  As a direct result of Volkswagen's unlawful, unfair, or fraudulent business acts and/or practices, plaintiff and other Class Members suffered injury in fact and lost money or property.

84.    Volkswagen profited from its sales of its falsely and deceptively advertised products to unwary customers.

85.    Accordingly, plaintiff, on behalf of himself and all others similarly situated, seek restitution, injunctive relief against Volkswagen in the form of an order prohibiting Volkswagen from engaging in the alleged misconduct described herein, and other relief as specifically prayed for herein.

3875932v1/014996

## FOURTH CLAIM FOR RELIEF

## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS

## CODE § 17500, et seq.

86.    Plaintiff re-alleges and incorporates all paragraphs above as though fully set forth herein.

87.    Volkswagen engaged in unlawful and/or fraudulent conduct under California Business & Professions Code §§ 17500, et seq. ("the False Advertising Law"), by engaging in the sale of the Defective Vehicles, and publically disseminating various advertisements that Volkswagen knew or reasonably should have known were untrue and misleading. Volkswagen committed such violations of the False Advertising Law with actual knowledge or knowledge fairly implied on the basis of objective circumstances.

88.    Volkswagen's advertisements, representations, and labeling as described herein were designed to, and did, result in the purchase, lease and use of the Defective Vehicles and Volkswagen profited from its sales of these products to unwary consumers.

89.    Plaintiff reasonably relied on Volkswagen's representations made in violation of California Business and Professions Code § 17500, et seq.

90.    As a direct result of Volkswagen's violations, plaintiff suffered injury in fact and lost money.

91.    Accordingly, plaintiff, on behalf of himself and all others similarly situated, seek restitution and injunctive relief against Volkswagen in the form of an order prohibiting Volkswagen from engaging in the alleged misconduct described herein, and other relief as specifically prayed for herein.

3875932v1/014996

## FIFTH CLAIM FOR RELIEF

## VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750 et seq.

92.    Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

93.    Defendant is a "person" within the meaning of California Civil Code §§ 1761(c) and 1770, and provides "goods" within the meaning of Civil Code §§ 1761(a) and 1770.   Volkswagen's customers, including plaintiff and Class members, are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770. Each purchase of Volkswagen's Defective Vehicles by plaintiff and each Class member constitutes a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

94.    Each class member purchased goods from Volkswagen that was primarily for personal, family, or household purposes.

95.    The Consumer Legal Remedies Act makes it unlawful for a company to:

    a. Misrepresent the certification of goods. Cal. Civ. Code § 1770(a)(2)(3);

    b. Represent that goods have characteristics or approval which they do not have. Cal. Civ. Code § 1770(a)(5);

    c. Represent that goods are of a particular standard, quality, or grade, if they are of another. Cal. Civ. Code § 1770(a)(7);

    d. Advertise goods with intent not to sell them as advertised. Cal. Civ. Code § 1770(a)(9).

    e. Represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not. Cal. Civ. Code § 1770(a)(16).

96.     Volkswagen violated and continues to violate the above mentioned provisions.

97.     As a direct and proximate result of Volkswagen's violations, plaintiff and other Class Members have suffered and are continuing to suffer irreparable harm.

98.     Volkswagen's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the California Consumer Legal Remedies Act because Volkswagen is still representing that the Defective Vehicles have characteristics and qualifications which are false and misleading, and has injured plaintiff and Class Members.

99.     In accordance with Civil Code § 1780(a), plaintiff seeks injunctive and equitable relief for Volkswagen's violations of the CLRA. In addition, after mailing appropriate notice and demand in accordance with Civil Code § 1782(a) and (d), plaintiff will amend this complaint to include a request for damages. Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief, including attorneys' fees and costs, as provided in Civil Code §1780.

## SIXTH CLAIM FOR RELIEF
## BREACH OF EXPRESS WARRANTY,
## CAL. UNIFORM COM. CODE § 2313

100.   Plaintiff re-alleges and incorporates all paragraphs above as though fully set forth herein.

101.   Volkswagen has expressly warranted that its Defective Vehicles comply with EPA and CARB emission standards and all other applicable laws and regulations.

3875932v1/014996

102. Volkswagen's express warranty that its Defective Vehicles comply with state and federal emission standards appears on Volkswagen's website, advertising materials, and instruction materials.

103. Volkswagen's warranties became part of the basis of the bargain in selling Defective Vehicles to plaintiff and other Class Members.

104. Volkswagen breached these express warranties by selling, and/or distributing the Defective Vehicles, which fail to comply with state and federal emissions standards.

105. Plaintiff and members of the Class paid money for vehicles that complied with state and federal emissions standards.  However, plaintiff and other Class Members did not obtain the full value of the advertised products.  If plaintiff and other Class Members had known the true nature of the Defective Vehicles, they would not have purchased the Defective Vehicles.

106. As a result of this breach, plaintiff and other Class Members suffered injury and deserve to be compensated for the damages they suffered.

107. Plaintiff and the Class are therefore entitled to recover compensatory damages, declaratory relief, and other relief as specifically prayed for herein.

## SEVENTH CLAIM FOR RELIEF

## VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY, CAL. CIV. CODE §§ 1791.1 & 1792

108. Plaintiff re-alleges and incorporates all paragraphs above as though fully set forth herein.

109. Plaintiff and other Class Members who purchased or leased Defective Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

110.  The Defective Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

111.  Volkswagen is a "manufacturer" of the Defective Vehicles within the meaning of Cal. Civ. Code § 1791(j).

112.  Volkswagen impliedly warranted to Plaintiff and Class Members that the Defective Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792.  However, the Defective Vehicles do not have the quality that a buyer would reasonably expect.

113.  Cal. Civ. Code § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1) Pass without objection in the trade under the contract description.

(2) Are fit for the ordinary purposes for which such goods are used.

(3) Are adequately contained, packaged, and labeled.

(4) Conform to the promises or affirmations of fact made on the container or label.

114.  The Defective Vehicles would not pass without objection in the automotive industry because they do not pass EPA and state emission regulations.

115.  Because of the defeat device that Volkswagen designed and installed in the Defective Vehicles, they emit up to 40 times the permitted level of nitrogen oxide and thus are not fit for ordinary purposes.

116.  The Defective Vehicles are not adequately labeled because their labeling fails to disclose the defeat device that causes certain features of the emissions systems to become inoperative during normal use.

117.  Volkswagen breached the implied warranty of merchantability by manufacturing and selling Defective Vehicles containing the defeat device.  And Volkswagen's fraudulent use of the defeat device has caused Plaintiff and the other

Class Members not to receive the benefit of their bargain and caused the Defective Vehicles to depreciate in value.

118. As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, Plaintiff and the other Class Members received goods containing the defeat device that substantially impairs their value to Plaintiff and the other Class Members. Plaintiff and the other Class Members have been damaged as a result of the diminished value of Volkswagen's Defective Vehicles, the Defective Vehicle's malfunctioning, and the nonuse of their Defective Vehicles.

119. Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff and the other Class Members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Defective Vehicles, or the overpayment or diminution in value of their Defective Vehicles.

120. Pursuant to Cal. Civ. Code § 1794, Plaintiff and the other Class Members are entitled to costs and attorney's fees.

## **PRAYER FOR RELIEF**

WHEREFORE plaintiff, on behalf of himself and all others similarly situated, pray for relief and judgment against Volkswagen as follows:

 A. Certification of this action as a class action and appointment of plaintiff as the Class representative and the undersigned counsel as Class counsel;

 B. An Order awarding plaintiff and Class Members injunctive relief, declaratory relief, statutory damages, and punitive damages against Volkswagen as provided in California Business and Professions Code, §§ 17202 and 17203, and California Civil Code § 1780;

C. An Order declaring the actions complained of herein to be in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, et seq.;

D. Restitution of all money and/or property that plaintiff and Class Members provided to Volkswagen for the purchase of Volkswagen's Defective Vehicles that were sold in violation of California Business and Professions Code § 17200 et seq.;

E. An Order awarding plaintiff and Class members restitution and disgorgement of Volkswagen's profits;

F. Damages, including punitive damages, in an amount to be determined at trial;

G. Pre and post-judgment interest;

H. Reasonable attorneys' fees and costs; and

I. Such other and further relief as this Court finds just and proper.

Dated:  September 24, 2015

Respectfully submitted,

MARC M. SELTZER
STEVEN G. SKLAVER
MATTHEW R. BERRY
SUSMAN GODFREY L.L.P.

By:  */s/ Steven G. Sklaver*
Steven G. Sklaver
Attorneys for Plaintiff Rich Hill

1

**DEMAND FOR JURY TRIAL**

2      Plaintiff, on behalf of himself and all others similarly situated, hereby

3   demand a jury trial on all issues so triable.

4

5   Dated:  September 24, 2015              Respectfully submitted,

6                                          MARC M. SELTZER
                                           STEVEN G. SKLAVER
7                                          MATTHEW R. BERRY
                                           SUSMAN GODFREY L.L.P.
8

9                                          By:  */s/ Steven G. Sklaver*

10                                              Steven G. Sklaver
                                                Attorneys for Plaintiff Rich Hill
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3875932v1/014996